Niv V. Davidovich, Esq. (State Bar No. 247328)
**DAVIDOVICH KAUFMAN LEGAL GROUP, APA**
6442 Coldwater Canyon Avenue, Suite 209
North Hollywood, California 91606
Tel: (818) 661-2420
Fax: (818) 305-5131
niv@davkauf.com

Attorneys for Plaintiff
YAS FRONTLINE DEVELOPMENT INC.,
and all persons similarly situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YAS FRONTLINE DEVELOPMENT INC., individually and on behalf of all persons similarly situated, | Case No.: |
| | **CLASS ACTION COMPLAINT FOR:** |
| Plaintiff, | |
| v. | 1. **BREACH OF CONTRACT** |
| | 2. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |
| FEDEX CORPORATION, a Delaware corporation; FED EX CORPORATE SERVICES, INC., a Delaware corporation; FEDEX GROUND PACKAGE SYSTEM, INC., a Delaware corporation, | 3. **VIOLATIONS OF FALSE ADVERTISING LAW (BUSINESS & PROFESSIONS CODE, §§ 17500, ET SEQ.)** |
| | 4. **VIOLATIONS OF 49 U.S.C. § 13708(b)** |
| Defendants. | 5. **FRAUDULENT MISREPRESENTATION** |
| | 6. **NEGLIGENT MISREPRESENTATION** |
| | 7. **VIOLATIONS OF UNFAIR BUSINESS PRACTICES LAW (BUSINESS & PROFESSIONS CODE, §§ 17200, ET SEQ.)** |
| | **DEMAND FOR JURY TRIAL** |

1

CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, YAS Frontline Development, Inc., doing business as, Compliance Assistance, individually and on behalf of all others similarly situated, and submits the following as its Class Action Complaint against the defendants, FedEx Corporation, FedEx Corporate Services, Inc., and FedEx Ground Package System, Inc. (collectively, "Defendants"), as follows:

## I.    PRELIMINARY STATEMENT

1.    This is a class action on behalf of the named Plaintiff, YAS Frontline Development, Inc. ("Plaintiff"), and all FedEx customers in the United States who purchased shipping services from Defendants and who were assessed "surcharges" by Defendants for such services after the customers' packages were shipped.  This action alleges that the Defendants charged and continue to charge its customers a fee which is incorrectly, unfairly, and fraudulently "adjusted," and continues to incorrectly, unfairly, and fraudulently "adjust" the pricing of these packages after its customers ship the items so that Defendants may improperly charge a higher price for the shipping which such customers did not agree to pay and which is in violation of Defendants' own pricing guidelines.

2.    Plaintiff and class members allege the facts herein upon information and belief except as to allegations specifically pertaining to Plaintiff, which allegations are based upon personal knowledge, and except as to allegations based upon documents which are predicated upon Plaintiff's counsel's investigation of Defendants.

3.    FedEx Ground Package System, Inc., commonly known as FedEx Ground, processes a minimum of 3.5 million small packages through its system daily and promises delivery nationwide within between one and five days.  The information technology that has helped to make FedEx Ground Package System, Inc. (hereinafter "FedEx Ground") a leading transporter of small packages in the United States is funded and overseen by defendant FedEx Corporation (hereinafter "FedEx") and managed and supported by defendant FedEx Corporate Services, Inc. (hereinafter "FedEx Services").

In contrast to their streamlined and efficient transportation model, however, defendant FedEx has put in place a labyrinthine and corrupt billing revenue enhancement model (the "BRE Model," as defined below).  Using this BRE Model to facilitate and conceal wrongdoing, the defendants have perpetrated a variety of covert billing scams which have resulted in FedEx Ground customers paying millions if not billions of dollars in overcharges.

4.    As set forth in greater detail below, in the "upweighting" scam, the Defendants have collaborated to use information technology that computes the weight of small packages at a fictional higher weight than the actual package weight.  The higher weight, in turn, automatically results in the assessment and collection of greater charges and surcharges for these packages.

5.    This is a proposed class action on behalf of two classes, each of which contains one subclass, of persons and entities within the United States.

6.    The first class, the upweighting class ("Upweighting Class"), consists of all U.S. customers of Fed Ex Ground who have paid for shipping packages by Fed Ex Ground where the size or weight of the package dictated that it be weighted with regard to its actual weight and not its dimensional weight.  Fed Ex wrongfully assessed the weight of the actual package by assigning a value of a completely different weight and size box than the package actually being shipped.

7.    The second class consists of the cylinder tube class ("Cylindrical Tube Class"), where customers were wrongfully assessed an additional surcharge for fully encased cylindrical tubes [26x2x2] they sent via their Fed Pricing Agreement for FedEx Ground shipments billed to their FedEx billing numbers.  This class consists of all commercial business persons or entities in the United States entitled to FedEx Pricing Agreement discounts for FedEx Ground shipments billed to their FedEx billing numbers.  Each of the above-defined classes contains a subclass that includes Plaintiff and those members of the class for whom Defendants transmit charges for FedEx

Ground's services directly to their credit card vendors and/or their bank or other depository accounts for payment (hereinafter the "e-commerce subclasses").

## II.    PARTIES

### A.    <u>Plaintiff</u>

8.    Plaintiff YAS Frontline Development, Inc. is a California Corporation with its principal place of business in Los Angeles County, California. Plaintiff paid Fed Ex Ground funds in return for the Defendants' promise to ship items at a pre- determined and agreed upon rate and method.  Although Plaintiff agreed to purchase these services, the Fed Ex Ground did not provide the services as agreed under the terms of written contracts and the course of dealing of the parties.  Plaintiff brings this action on its own behalf and as a representative of a class of persons similarly situated.

9.    Plaintiff engages in the business of online retail sales in the United States of labor law posters and compliance signs.

10.    Plaintiff was a customer of FedEx Ground and FedEx starting in about March 2015.

11.    Plaintiff licensed FedEx automation software from Defendants so that Plaintiff could transmit details of each shipment to defendants, print shipping labels, and schedule pick-ups with FedEx Ground.

12.    Nearly all of the packages shipped by Plaintiff via FedEx Ground are cylindrical tubes (26 x 2 x 2) and, therefore, should be rated based upon their actual weight in pounds.

13.    Plaintiff is a member of each of the proposed classes defined above.

### B.    <u>Defendants</u>

14.    FEDEX CORPORATION ("FedEx Corp") is a defendant herein. FedEx Corp is a Delaware corporation with its principal place of business in Memphis, Tennessee.  FedEx Corp, the parent corporation of, among others, FedEx Corporate Services, Inc. and FedEx Ground, engages in the business of funding, controlling and

CLASS ACTION COMPLAINT

overseeing the website fedex.com, FedEx automation software, and also information technology developed and deployed in connection with weighing, measuring, rating, pricing, billing and payment for services of FedEx Ground. FedEx Corp establishes and orchestrates corporate policies such as the BRE Model described below. FedEx Corp has overseen the policies and practices of FedEx Corporate Services, Inc. described in this complaint. Additionally, FedEx Corp has received ill-gotten gains from the policies and practices alleged herein.

15.    FEDEX CORPORATE SERVICES, INC. ("FedEx Services") is a defendant herein. FedEx Services is incorporated in the State of Delaware with its principal place of business in or near Memphis, Tennessee.  FedEx Services has been in operation since June 2000.  FedEx Services engages in the business of providing, among other things, customer service and information technology management and support in connection with scanning, data collection, sorting, weighing, measuring, rating, and billing for FedEx Ground.

16.    FEDEX GROUND PACKAGE SYSTEM, INC. is a defendant herein. FedEx Ground is incorporated in the State of Delaware and has its principal place of business in Moon Township, Pennsylvania. FedEx Ground engages in the shipment and delivery of small packages by motor carrier in the United States and Canada.

17.    FedEx Corp, FedEx Ground, and FedEx Services are referred to herein collectively as "FedEx" or "Defendants."

### III.    JURISDICTION AND VENUE

18.    This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(b) in that this is a civil class action in which the matter in controversy exceeds the sum or value of $75,000 and the members of the class of Plaintiffs, including the named Plaintiff herein, are citizens of a state different from Defendants.

19.    This Court has supplement jurisdiction over the state law claims in  this matter pursuant to  28 U.S.C. § 1367(a) as such causes of action are so related to the

claims in the action over which the Court has original jurisdiction pursuant to 28 U.S.C. § 1332 that they form part of the same case or controversy under Article III of the United States Constitution.

20.    The Defendants are subject to personal jurisdiction in this district in that they have employed agents or representatives or have otherwise employed persons in this district, and in that the Defendants:

(a)    have transacted business in this district;

(b)    have contracted to supply services in this district;

(c)    have caused injury or damage in this district by acts or omissions outside this district while regularly doing and soliciting business in this district; and

(d)    otherwise have had minimum contacts with this district and, under the circumstances, it is fair and reasonable to require the defendants to come into this district to defend this action.

21.    Venue is proper in this district in that defendant previously consented thereto and because, pursuant to 28 U.S.C. § 1391:

(a)    The events or omissions giving rise to the claims occurred in this district; and

(b)    Defendants regularly conduct business in this district and are therefore deemed to reside in this district pursuant to 28 U.S.C. § 1391(c) because they are subject to personal jurisdiction in this district in that the Defendants:

(i)    have transacted business in this district;

(ii)    have contracted to supply services in this district;

(iii)    have caused injury or damage in this district by acts or omissions outside this district while regularly doing and soliciting business in this district; and

6

CLASS ACTION COMPLAINT

(iv)   otherwise have had minimum contacts with this district and, under the circumstances, it is fair and reasonable to require the defendant to come into this district to defend this action.

## IV.   FACTS

22.   Since in or around March 2015, Plaintiff entered into written agreements ("Agreements") with defendants FedEx and FedEx Ground, through their agent FedEx Services, whereby FedEx and FedEx Ground would provide shipping services to Plaintiff in exchange for payment by Plaintiff for those services, which services were administered by FedEx Services.

23.   The Agreements provided, among other terms, that Plaintiff would be billed for shipping based on the greater of: a) the actual weight of a package; and b) the "dimensional weight" of a package, wherein the "dimensional weight" was calculated by "multiplying the length by width by height of each package in inches and dividing the total by 166 (for all shipments within the U.S. and FedEx Express shipments between the U.S. and Puerto Rico) or 139 (for all U.S. export and U.S. import-rated international shipments)."

24.   In breach of the Agreements, FedEx manipulated these billing procedures so that it could improperly invoice Plaintiff increased shipping charges based on false dimensions, i.e., during the shipping and billing process, FedEx falsely increased the dimension sizes on the packages Plaintiff and other FedEx customers shipped through FedEx. By increasing the dimension size, Defendants were able to increase the price they charged for the shipping.

25.   Similarly, in other instances, FedEx would add a surcharge to cylindrical packages which were fully encased on corrugated cardboard as if they were not so encased, in violation of the Agreements.

26.   These fraudulent and wrongful charges showed up on the FedEx customers' delivery service invoices under a heading entitled "Transaction Details" and

under a sub-heading entitled "Charges."

27.    Once Plaintiff became aware of FedEx's improper overcharges, it repeatedly gave notice to various FedEx employees about the problem and asked them to correct it. On many occasions, FedEx failed to correct the overcharges. FedEx continued to assess overcharges to Plaintiff even after Plaintiff notified FedEx about the problem. Moreover, there was a long period of time that Plaintiff was unaware of the overcharges because FedEx did not disclose the problem to Plaintiff and made purposeful and intentional efforts to hide such charges. Thus, Plaintiff was unable to give notice to FedEx about those overcharges.

28.    As a result of manipulating dimension sizes on these packages, FedEx illegally increased shipping charges to Plaintiff and others similarly situated who contracted to pay for the shipping services. As a result, Plaintiff and other FedEx customers sustained substantial damages in improper increased shipping charges.

29.    In addition, the Agreements provide that an additional surcharge would only apply to certain cylindrical packages if they "are not fully encased in a shipping container made of corrugated cardboard."  Plaintiff shipped cylindrical packages fully encased in a shipping container made of corrugated cardboard. In direct contravention of the terms of the Agreements, Fed Ex wrongfully added surcharges for these packages.

## V.    COMMON FACTS

30.    American business is dependent upon fast, reliable and timely small package delivery services.

31.    Until it was acquired by FedEx in or about January 1998, Roadway Package System ("RPS") was a subsidiary of Caliber Systems, Inc. RPS was engaged in the business of small package delivery services with its principal place of business in Pittsburgh, Pennsylvania.    Employing sophisticated information technology and powerful computer hardware, RPS sorted, weighed, measured, rated, and billed the packages it transported and delivered.  In or about January 2000, RPS was rebranded as

FedEx Ground.

32.    FedEx Ground holds itself out as providing 100-percent coverage to every business address in the United States, with small package delivery in one to five business days in the continental United States.  FedEx Ground provides service throughout the United States and Canada, to consumers and businesses alike.

33.    FedEx Ground no longer does its own billing and does not provide online or software driven shipping solutions.  FedEx Corp oversees and FedEx Services performs these functions for FedEx Ground.  FedEx Corp automation software and the fedex.com website (the former to FedEx Ground's business customers and the latter to FedEx Ground's business customers and consumers) are licensed to such customers so that they can electronically transmit to defendants' shipment details and electronically receive from defendants such information as shipment status, history and account summaries.

34.    Package weight and dimensions are among the shipment details that customers typically transmit electronically to defendants.

35.    Following pick up by FedEx Ground truck, packages are forwarded by truck to FedEx Ground's nearest ground hub or automated satellite for sorting and processing.

36.    FedEx Corp and FedEx Services, in collaboration with third-party information technology companies whose identities are currently unknown to Plaintiff, have designed or altered the design of, managed and supported a system employing sophisticated information technology consisting of electronic scanning, data collection, weighing, measuring, sorting, rating and billing.

37.    As a package works its way through FedEx Ground's hub or satellite, information technology managed and supported by defendant FedEx Services automatically calculates its weight and physical dimensions without human intervention and routes the package based on information encoded on its shipping label.

9

38.     The package is grouped with other packages destined for the same geographic area and then readied for delivery by FedEx Ground truck to another hub, automated satellite or the package recipient.

39.     Depending upon ultimate destination, packages may pass through a number of different hubs or automated satellites before delivery.

40.     For each of the more than 3.5 million packages that FedEx Ground picks up on an average day, information technology under the control of and overseen by FedEx Corp and managed and supported by defendant FedEx Services plots a specific path based on a variety of factors ranging from the package's destination and distance traveled to special handling instructions from the customer.

41.     Package weight, dimensions, destination, distance traveled, type of service purchased and shipment volumes are the fundamental variables defendants use in computing charges, surcharges and fees for packages shipped by FedEx Ground.

42.     Under FedEx's terms of service, shipping charges for packages smaller than three cubic feet are to be based on their actual weight in pounds.  Shipping charges for all packages of three cubic feet or larger are to be based on the greater of the actual weight or dimensional weight (determined by multiplying the package's length, width and height in inches, and dividing by the factors provided above).

43.     Beginning at a time known only to Defendants but at least as early as 2015, Defendants entered into a continuing scheme or artifice to defraud Plaintiff and members of the upweighting class who employed FedEx Ground to transport and deliver packages to destinations in the United States.  This scheme will continue until Defendants terminate it either voluntarily or under court order.

44.     In furtherance of this fraudulent scheme, Defendants have done those things they schemed to do including, among others, the following:

(a)     commandeering, designing or altering the design of, managing and supporting information technology that can cause package weight

to be fixed at a fictive higher weight than its actual weight through using false dimensions which do not accurately reflect the package's actual dimensions ("upweighting");

(b)  employing information technology that automatically and without human intervention causes the various charges for upweighted packages to be artificially inflated in accordance with complex formulas and algorithms within Defendants' exclusive knowledge and control;

(c)  assessing artificially inflated charges attributable to upweighting and/or continuing to assess such artificially inflated charges attributable to such upweighting long after defendants had knowledge of upweighting discrepancies;

(d)  seeking and receiving payment from Plaintiff and other members of the upweighting class for artificially inflated charges attributable to upweighting;

(e)  perpetuating, facilitating and concealing upweighting and attempting to unfairly shield themselves from liability by creating and implementing a labyrinthine, corrupt and elaborate structure and system FedEx has masterminded in order to implement the schemes described above, including a byzantine online billing system that obscures billing discrepancies, and, with respect to all classes, includes draconian billing adjustment terms and conditions, and other unfair and deceptive structures, terms and tools designed to disadvantage customers in their transactions with defendants. All aspects of this billing model place an undue burden upon customers to discover billing discrepancies and timely seek refunds, making it extremely difficult, if not impossible, for customers (even those

CLASS ACTION COMPLAINT

who self-audit or hire third parties) to discover and obtain refunds for all of the overcharges FedEx imposes. Among other things, defendants' corrupt billing model:

    i.     generates a vast quantity and variety of transactional reports and statements, in which various charges for transportation associated with a single transaction are disaggregated into many different statements listing separate items for multiple transactions, with no single invoice itemizing and totaling all the charges included in each transaction ("disaggregated charges"). The disaggregated charges are combined with disaggregated charges of unrelated transactions in such a way as to make it unreasonably difficult for customers to discern which charges relate to which shipments or to understand all of the charges that apply to any individual shipment;

    ii.    relies upon and exploits the fact that customers who move large numbers of packages daily generally have neither the time nor the resources to cost-effectively reconstruct the undifferentiated mass of disaggregated charges in order to verify whether the total charge for the shipment of any single package is accurate or contains overcharges concealed in the labyrinth of data;

    iv.    intentionally conceals from customers the existence of systemic overcharges such as upweighting and fails to automatically adjust and refund such overcharges;

    v.     makes it unduly complex and difficult for customers to know and understand their contractual rights, using

several separate governing contracts, including the Service Guide with numerous convoluted terms buried within hundreds of pages of small-print, single-space text, all of which are incorporated by reference into FedEx's standard form contracts of adhesion but not physically part of such contracts, instead being made available online;

vi. makes it difficult for customers to know and understand what they are being charged and why, using a complex and opaque billing system and placing the onus on customers to affirmatively seek out and access their so-called "invoices" and information about charges for their shipments on the internet;

vii. makes it difficult for customers to enforce their rights through the use of carefully drafted Service Guide language which makes it futile for customers to attempt to obtain full reimbursement for such overcharges by, *e.g.*, (a) placing the onus entirely upon customers to track, discover and report such overcharges within an abbreviated time frame; and (b) requiring detailed transaction-by-transaction notification before such claims will be considered; and establishing other hurdles designed to discourage and hamper customers' efforts to obtain refunds and other relief; and

viii. earns hundreds of millions of dollars of illicit profits from the assessment of improper overcharges.

45. The upweighting described is not unintentional. The upweighted packages

CLASS ACTION COMPLAINT

were not confined to a specific facility or zone but rather were transported to and through various FedEx Ground facilities in the United States.  Nor was the upweighting confined to Plaintiff.  Postings by consumers on numerous Internet websites indicate that many consumers have experienced the same pattern of upweighting by defendants as Plaintiff has experienced. These postings bear dates in every year from at least 2015 on. Defendants long have been on notice of such upweighting and despite such notice continue to upweight packages.

46.    Each of the Defendants has quarantined its role in the foregoing scheme so that it can conceal and plausibly deny knowledge of and participation therein.

47.    Reconstruction of the disaggregated charges into transaction-by-transaction itemized and total charges in an effort to verify the accuracy of FedEx invoicing has required time consuming and painstaking effort and, even with that, Plaintiff has not always been successful in reconstructing transactions for which it possessed complete records.

48.    In the months leading up to April 2017, however, Plaintiff became aware of multiple overcharges for missing discounts Plaintiff notified defendants of these overcharges.

49.    Altogether Plaintiff has identified at least 1,000 transactions in which defendants improperly assessed Plaintiff wrongful surcharges between October 2016 – July 2017.  Many of the upweighted packages and wrongly assessed cylindrical package surcharges contained identical products, packaging materials, dimensions and weight (as verified by Plaintiff before pick-up).

50.    All charges for FedEx Ground's services that were attributable to upweighting were electronically transmitted or caused to be transmitted by FedEx Services to Plaintiff's bank for payment from Plaintiff's bank account. In reliance upon the accuracy of these charges, Plaintiff's bank debited from Plaintiff's account the amount of the charges that FedEx transmitted and, in turn, such funds were transmitted

CLASS ACTION COMPLAINT

from Plaintiff's bank into a depository owned or controlled by FedEx. This typified the process for all subclass members whose bank or other depository accounts were subject to electronic debit. As to the remainder of the subclass members, the charges were transmitted or caused to be transmitted by FedEx Services to the subclass members' credit card companies. In reliance upon the accuracy of these charges, those subclass members' credit card companies paid the amount of the charges that FedEx transmitted and, in turn, billed those amounts to the subclass members.

## VI.    CLASS ALLEGATIONS

51.    Plaintiff does not know the exact numbers of class members or the identities of the businesses included in the proposed classes since such information is in the exclusive control of defendants. Plaintiff is informed and believes, however, that most of the members of the proposed classes, and practically all of the members of the proposed subclasses, are consumers and small e-merchants numbering at least in the tens of thousands and geographically dispersed throughout the United States. Therefore, the proposed classes are so numerous that joinder of all members is impracticable.

52.    All members of the above-defined classes have been subject to and affected by the same schemes described herein. There are questions of law and fact that are common to the classes, and predominate over any questions affecting only individual members of the classes. These questions include, but are not limited to, the following:

(a)    The nature, scope and operations of Defendants' unlawful upweighting schemes;

(b)    Whether Defendants have had a policy and practice of overcharging customers based on false weights and fraudulent or deceptive charges for packages;

(c)    Whether Defendants have breached their services agreements with their customers;

(d)    Whether Defendants have breached the implied covenant of good

faith and fair dealing implied in their services agreements with their customers;

(e)   Whether Defendants have violated Unfair Competition Law (California Business and Professions Code, §§ 17200, et seq.);

(f)   Whether Defendants have engaged in False Advertising in violation of California Business and Professions Code 17500;

(g)   Whether Defendants have violated 49 U.S.C. § 13708(b);

(h)   Whether Defendants fraudulently and/or negligently misrepresented the prices they would charge their customers for shipping services;

(i)   Whether the charges paid by Plaintiff and members of the classes for packages shipped by FedEx Ground were based upon falsely inflated weights, or unapplied or improperly applied discounts; and

(j)   Whether Plaintiff and other class members were injured by Defendants' unlawful conduct and, if so, the appropriate measure of damages.

53.   The claims of the Plaintiff are typical of the claims of the above-defined classes and do not conflict with the interests of any other members of the classes in that both the Plaintiff and the other members of the classes were subject to the same wrongful acts of Defendants.

54.   The Plaintiff will fairly and adequately represent the interests of the proposed classes. The Plaintiff is committed to the vigorous prosecution of the classes' claims and has retained attorneys who are qualified to pursue this litigation and have experience in class actions.

55.   The prosecution of separate actions by individual members of the above-defined classes would create the risk of inconsistent adjudications on the same issues with respect to individual members of the classes.

CLASS ACTION COMPLAINT

56.     The questions of law and fact common to members of the above-defined classes predominate over any questions affecting only individual members.

57.     Excluded from the classes are Defendants, any entity in which a Defendant has a controlling interest or is a parent or subsidiary thereof, any of defendants' officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors, and assigns and any other person or entity acting on their behalf.

58.     Defendants' business practices and violations of the law are uniform, and, on information and belief, Defendants have collected money for increased shipping charge corrections from hundreds of thousands of customers in the United States (including Plaintiff and the class members) in violation of applicable statutes, the common law, the Defendants' written agreements with its customers, and the parties' course of dealing with each other.

59.     The requirements of Rule 23(a), Fed. R. Civ. P., are satisfied because (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative party are typical of claims or defenses of the class, and (4) the Plaintiff will fairly and adequately protect the interests of the class and has hired counsel experienced in the prosecution of class actions.

60.     The representative Plaintiff will fairly and adequately assert and protect the interests of the class, in that:

        (a)     The representative Plaintiff has no conflicts of interest with absent class members in the maintenance of this action, and pursues this action for benefit of the Plaintiff class. Plaintiff has no present relationship with any defendant, in either an official or unofficial capacity;

        (b)     The representative Plaintiff, taken in conjunction with counsel, has adequate financial and other resources to conduct this litigation in a

manner assuring that the interests of the Plaintiff class will not be harmed. Class counsel have agreed and have the ability to advance costs of this litigation; and

(c) The representative Plaintiff has retained counsel who are experienced in class action litigation.

61. The requirements of Rule 23(b) are satisfied in that the prosecution of separate actions by or against individual members of the class would create a risk of (a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

62. The common issues represent the most significant issues in the class and can be resolved for all members of the class in one action.

63. A class action will provide a fair and efficient method of adjudicating this controversy, in that:

(a) Common questions of law and fact predominate over any questions affecting only individual class members. The common issues are the most significant issues in the case, and can be resolved for all members of the class in one action;

(b) Neither the size of the class nor any other factor makes it likely that difficulties will be encountered in the management of this action as a class action;

(c) The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would confront defendants with incompatible standards of conduct;

CLASS ACTION COMPLAINT

(d)    The prosecution of separate actions by individual class members would as a practical matter be dispositive of the interests of other members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests;

(e)    The prosecution of separate actions by individual class members, or the individual joinder of all class members in this action, would create a massive and unnecessary burden on the resources of the courts; and

(f)    Because of the disparity of resources available to defendant versus those available to individual class members, prosecution of separate actions would work a financial hardship on many class members.

## VII.   FIRST CAUSE OF ACTION
## BREACH OF CONTRACT
### (Against FedEx Corp and FedEx Ground)

64.    Plaintiff and all putative class members restate and incorporate each and every preceding paragraph as if fully set forth herein.

65.    Plaintiff and all putative class members entered into written contracts with Defendants FedEx Corp and FedEx Ground whereby Defendants FedEx Corp and FedEx Ground agreed to ship packages for them based upon a pre-determined rate and agreed upon method.

66.    Plaintiff and all putative class members performed all of their duties under the contracts, i.e., they paid the agreed upon rates and followed the agreed upon methods in determining the rates for the service, except those duties which have been excused.

67.    After FedEx Corp and FedEx Ground picked up the Plaintiff's and putative class members' packages, FedEx Corp and FedEx Ground unilaterally audited certain packages for size dimension verification. During this audit, Defendants improperly and illegally falsely increased the package's size dimension.  During this audit, Defendants

also illegally improperly and illegally falsely added a surcharge for cylindrical packages
not fully encased in corrugated cardboard despite all of Plaintiff's packages always
being fully encased in corrugated cardboard. Such practice and the practices as alleged
above breached the terms and conditions of Plaintiff's and the putative class members'
contracts with defendant.

68.    Plaintiff and putative class members suffered substantial economic loss and
damages as a proximate result of FedEx Corp and FedEx Ground's breaches of contract.

69.    Wherefore, Plaintiff and putative class members seek relief as prayed for
herein.

## VIII.  SECOND CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against FedEx Corp and FedEx Ground)

70.    Plaintiff and all putative class members restate and incorporate each and
every preceding paragraph as if fully set forth herein.

71.    Plaintiff and all putative class members entered into written contracts with
Defendants FedEx Corp and FedEx Ground whereby Defendants FedEx Corp and
FedEx Ground agreed to ship packages for them based upon a pre-determined rate and
agreed upon method.

72.    Each and every contract imposed upon the parties has an absolute duty of
good faith and fair dealing and the duty to ensure that neither party does anything to
injure the rights of the other to receive the benefits of the contract.

73.    Defendants FedEx Corp and FedEx Ground knew or had reason to know
that Plaintiff and all putative class members would rely on the FedEx Corp and FedEx
Ground to properly weigh and price their shipments consistently with their advertised
and agreed-upon pricing terms.

74.    The covenant of good faith and fair dealing obligated FedEx Corp and
FedEx Ground to properly weigh and price their shipments consistently with their

advertised and agreed-upon pricing terms.

75.    By doing all the acts alleged above, including the failure to properly weigh and price Plaintiff's and all putative class members' shipments consistently with FedEx Corp and FedEx Ground's advertised and agreed-upon pricing terms, FedEx Corp and FedEx Ground unreasonably and without proper cause breached the implied covenant of good faith and fair dealing.

76.    These breaches were done unreasonably and were intended in fact to and did rob Plaintiff and all putative class members of their rights under the contracts with FedEx Corp and FedEx Ground to be fairly and properly priced for shipments.  Such actions by Defendant FedEx Corp and FedEx Ground were flagrant, willful, wanton and were undertaken with a total disregard for FedEx Corp and FedEx Ground's obligations under the contracts, law and to Plaintiff's interests and that of all putative class members.

77.    As a proximate result of Defendant FedEx Corp and FedEx Ground's breach of such implied covenants, Plaintiff and all putative class members have been damaged by, among other things, loss of monies for overpriced shipping and improper surcharges for cylindrical packages not being fully encased in corrugated cardboard despite the packages in question being fully encased in corrugated cardboard, which damages Plaintiff and all putative class members have suffered and will continue to suffer according to proof at trial.

78.    Plaintiff and all putative class members performed all of their duties under the contracts, i.e., they paid the agreed upon rates and followed the agreed upon methods in determining the rates for the service, except those duties which have been excused.

79.    Wherefore, Plaintiff and putative class members seek relief as prayed for herein.

## IX.    THIRD CAUSE OF ACTION
## VIOLATIONS OF FALSE ADVERTISING LAW
## (CAL. BUSINESS & PROFESSIONS CODE, § 17500, ET SEQ.)

**(Against all Defendants)**

80.     Plaintiff and all putative class members restate and incorporate each and every preceding paragraph as if fully set forth herein.

81.     By doing the acts alleged above, Defendants represented to Plaintiff and all putative class members that it would provide shipping services for parcels in exchange for payments calculated by actual weight or dimensional weight pursuant to the agreed-upon rates set forth in the Agreements.  By stating they may calculate the shipping charges based on the dimensional weight, which is in turn calculated based on the dimensions of the package, Defendants were representing they would charge Plaintiff and all putative class members based on the actual dimensions of the packages. Similarly, Defendants represented they would only add surcharges to a cylindrical package when it was not fully encased in corrugated cardboard.

82.     These representations were untrue and misleading in that it was Defendants' intent, pattern, and practice to charge Plaintiff and all putative class members shipping rates via their "upweighting" scheme as alleged above in order to grossly and unfairly increase shipping rates for above and in excess of the rates advertised and represented to Plaintiff and all putative class members by tampering with the actual dimensions of the packages and using false and fraudulent dimensions to calculate shipping rates. Similarly, these representations were untrue and misleading in that it was Defendants' intent, pattern, and practice to charge Plaintiff and all putative class members additional surcharges for cylindrical packages regardless of whether or not they were fully encased in corrugated cardboard.

83.     Defendants knew that such representations were false, untrue and/or misleading, or, at the least, by the exercise of reasonable care should have known, that such advertised and represented shipping rates and calculation methods were false, untrue, and/or misleading in that they were inconsistent with Defendants' actual billing practices.

84.     In doing the acts alleged hereinabove, Defendants violated California Business and Professions Code section 17500, the "False Advertising Law."

85.     As a result of Defendants' violations of the False Advertising Law and unlawful acts alleged above, Defendants paid far in excess for shipping services through Defendants than they would have paid had Defendants not used their "upweighting" scheme and/or cylindrical package pricing scheme and priced all shipments consistent with their represented and advertised shipping rates, and thus were injured and lost money.

86.     Wherefore, Plaintiff and putative class members seek relief as prayed for herein.

## X.     FOURTH CAUSE OF ACTION
## VIOLATIONS OF FALSE ADVERTISING LAW
## (BUSINESS & PROFESSIONS CODE, § 17500, ET SEQ.)
### (Against all Defendants)

87.     Plaintiff, on its own behalf and on behalf of the class members, incorporates and realleges each of the preceding paragraphs of this Complaint as if fully set out herein.

88.     Defendants are each a "person" within the meaning of 49 U.S.C. § 13102 *et. seq.*

89.     FedEx Ground is a motor carrier within the meaning of 49 U.S.C. § 13102 *et. seq.*

90.     Pursuant to 49 U.S.C. § 13708(b), "No person may cause a motor carrier to present false or misleading information on a document about the actual rate, charge, or allowance to any party to the transaction."

91.     By doing the acts alleged above, Defendants represented to Plaintiff and all putative class members that it would provide shipping services for parcels in exchange for payments calculated by actual weight or dimensional weight pursuant to the agreed-

23

upon rates set forth in the Agreements.  By stating they may calculate the shipping charges based on the dimensional weight, which is in turn calculated based on the dimensions of the package, Defendants were representing they would charge Plaintiff and all putative class members based on the actual dimensions of the packages. Similarly, Defendants represented they would only add surcharges to a cylindrical package when it was not fully encased in corrugated cardboard.

92.    These representations were untrue and misleading in that it was Defendants' intent, pattern, and practice to charge Plaintiff and all putative class members shipping rates via their "upweighting" scheme as alleged above in order to grossly and unfairly increase shipping rates for above and in excess of the rates advertised and represented to Plaintiff and all putative class members by tampering with the actual dimensions of the packages and using false and fraudulent dimensions to calculate shipping rates. Similarly, these representations were untrue and misleading in that it was Defendants' intent, pattern, and practice to charge Plaintiff and all putative class members additional surcharges for cylindrical packages regardless of whether or not they were fully encased in corrugated cardboard.

93.    Defendants knew that such representations were false, untrue and/or misleading, or, at the least, by the exercise of reasonable care should have known, that such advertised and represented shipping rates and calculation methods were false, untrue, and/or misleading in that they were inconsistent with Defendants' actual billing practices.

94.    49 U.S.C. § 14704(a)(2) provides that "[a] carrier or broker providing transportation or service subject to jurisdiction under chapter 135 is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part" and thereby provides Plaintiff with a private right of action for Defendants' violation of 49 U.S.C. § 13708.

95.    As a result of Defendants' violations of the False Advertising Law and

CLASS ACTION COMPLAINT

unlawful acts alleged above, Defendants paid far in excess for shipping services through Defendants than they would have paid had Defendants not used their "upweighting" scheme and priced all shipments consistent with their represented and advertised shipping rates, and thus were injured and lost money.

96.    Wherefore, Plaintiff and putative class members seek relief as prayed for herein.

## XI.    FIFTH CAUSE OF ACTION
## FRAUDULENT MISREPRESENTATION
### (Against All Defendants)

97.    Plaintiff and all putative class members restate and incorporate each and every preceding paragraph as if fully set forth herein.

98.    By doing the acts alleged above, Defendants represented to Plaintiff and all putative class members that it would provide shipping services for parcels in exchange for payments calculated by actual weight or dimensional weight pursuant to the agreed-upon rates set forth in the Agreements.  By stating they may calculate the shipping charges based on the dimensional weight, which is in turn calculated based on the dimensions of the package, Defendants were representing they would charge Plaintiff and all putative class members based on the actual dimensions of the packages. Similarly, Defendants represented they would only add surcharges to a cylindrical package when it was not fully encased in corrugated cardboard.

99.    These representations were untrue and misleading in that it was Defendants' intent, pattern, and practice to charge Plaintiff and all putative class members shipping rates via their "upweighting" scheme as alleged above in order to grossly and unfairly increase shipping rates for above and in excess of the rates advertised and represented to Plaintiff and all putative class members by tampering with the actual dimensions of the packages and using false and fraudulent dimensions to calculate shipping rates. Similarly, these representations were untrue and misleading in

that it was Defendants' intent, pattern, and practice to charge Plaintiff and all putative class members additional surcharges for cylindrical packages regardless of whether or not they were fully encased in corrugated cardboard.

100.    Defendants knew that such representations were false, untrue and/or misleading, or, at the least, by the exercise of reasonable care should have known, that such advertised and represented shipping rates and calculation methods were false, untrue, and/or misleading in that they were inconsistent with Defendants' actual billing practices.

101.    Plaintiff and all putative class members reasonably relied on these representations because Defendants were in the best position to know how they would actually process, price, and charge their customers for shipping services.

102.    As a result of Defendants' misrepresentations as alleged above, Defendants paid far in excess for shipping services through Defendants than they would have paid had Defendants not used their "upweighting" and cylindrical package schemes and priced all shipments consistent with their represented and advertised shipping rates, and thus were injured and lost money.

103.    Defendants made these misrepresentations unreasonably and were intended in fact to and did rob Plaintiffs of the contracted-for benefits to which Plaintiffs were rightfully entitled under the shipping service contracts alleged above.  Such actions by Defendants were flagrant, willful, wanton and were undertaken with a total and reckless disregard for Defendants' obligations and Plaintiff's rights under the shipping contracts, law and to Plaintiffs' interests.  Thus, the imposition of punitive/exemplary damages is appropriate.

104.    Wherefore, Plaintiff and putative class members seek relief as prayed for herein.

## XII.    SIXTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

**(Against All Defendants)**

105.   Plaintiff and all putative class members restate and incorporate each and every preceding paragraph as if fully set forth herein.

106.   By doing the acts alleged above, Defendants represented to Plaintiff and all putative class members that it would provide shipping services for parcels in exchange for payments calculated by actual weight or dimensional weight pursuant to the agreed-upon rates set forth in the Agreements.   By stating they may calculate the shipping charges based on the dimensional weight, which is in turn calculated based on the dimensions of the package, Defendants were representing they would charge Plaintiff and all putative class members based on the actual dimensions of the packages. Similarly, Defendants represented they would only add surcharges to a cylindrical package when it was not fully encased in corrugated cardboard.

107.   These representations were untrue and misleading in that it was Defendants' intent, pattern, and practice to charge Plaintiff and all putative class members shipping rates via their "upweighting" scheme as alleged above in order to grossly and unfairly increase shipping rates for above and in excess of the rates advertised and represented to Plaintiff and all putative class members by tampering with the actual dimensions of the packages and using false and fraudulent dimensions to calculate shipping rates. Similarly, these representations were untrue and misleading in that it was Defendants' intent, pattern, and practice to charge Plaintiff and all putative class members additional surcharges for cylindrical packages regardless of whether or not they were fully encased in corrugated cardboard.

108.   Defendants made these representations negligently and with reckless disregard as to their truth or falsity at the time that they were made in that they were inconsistent with Defendants' actual, on-going billing practices, which Defendants concealed from Plaintiff and all putative class members, both before the parties entered into shipping contracts and during the term of such contracts.

109.    Plaintiff and all putative class members reasonably relied on these representations because Defendants were in the best position to know how they would actually process, price, and charge their customers shipping services.

110.    As a result of Defendants' misrepresentations as alleged above, Defendants paid far in excess for shipping services through Defendants than they would have paid had Defendants not used their "upweighting" scheme and priced all shipments consistent with their represented and advertised shipping rates, and thus were injured and lost money.

111.    Defendants made these misrepresentations unreasonably and were intended in fact to and did rob Plaintiffs of the contracted-for benefits to which Plaintiffs were rightfully entitled under the shipping service contracts alleged above.  Such actions by Defendants were flagrant, willful, wanton and were undertaken with a total and reckless disregard for Defendants' obligations and Plaintiff's rights under the shipping contracts, law and to Plaintiffs' interests.  Thus, the imposition of punitive/exemplary damages is appropriate.

112.    Wherefore, Plaintiff and putative class members seek relief as prayed for herein.

## XIII.  SEVENTH CAUSE OF ACTION
## VIOLATIONS OF UNFAIR COMPETITION LAW
## (CAL. BUSINESS & PROFESSIONS CODE, §§ 17200, ET SEQ.)
### (Against all Defendants)
### (Against All Defendants)

113.    Plaintiff and all putative class members restate and incorporate each and every preceding paragraph as if fully set forth herein.

114.    By doing the acts alleged above, Defendants represented to Plaintiff and all putative class members that it would provide shipping services for parcels in exchange for payments calculated by actual weight or dimensional weight pursuant to the agreed-

CLASS ACTION COMPLAINT

upon rates set forth in the Agreements. By stating they may calculate the shipping charges based on the dimensional weight, which is in turn calculated based on the dimensions of the package, Defendants were representing they would charge Plaintiff and all putative class members based on the actual dimensions of the packages. Similarly, Defendants represented they would only add surcharges to a cylindrical package when it was not fully encased in corrugated cardboard.

115. These representations were untrue and misleading in that it was Defendants' intent, pattern, and practice to charge Plaintiff and all putative class members shipping rates via their "upweighting" scheme as alleged above in order to grossly and unfairly increase shipping rates for above and in excess of the rates advertised and represented to Plaintiff and all putative class members by tampering with the actual dimensions of the packages and using false and fraudulent dimensions to calculate shipping rates. Similarly, these representations were untrue and misleading in that it was Defendants' intent, pattern, and practice to charge Plaintiff and all putative class members additional surcharges for cylindrical packages regardless of whether or not they were fully encased in corrugated cardboard.

116. Defendants' actions as alleged herein were unfair, fraudulent, and unlawful in violation of the Unfair Competition Law. (Cal. Business & Professions Code, §§ 17200, et seq.) ("UCL")

117. Defendants' actions were "unfair" within the meaning of the UCL in that:

    (a)    The consumer injury suffered by Plaintiff and the putative class members was substantial;

    (b)    The injury outweighs any possible countervailing benefits to consumers or competition afforded by such misrepresentations, of which are no such benefits; and

    (c)    Plaintiff and the putative class members could not have reasonably avoided such injury, as they were unaware that Defendants would

engage in this overcharging and "upweighting" scheme before they contracted with Defendants.

118.   Defendants' actions as alleged hereinabove were "fraudulent" within the meaning of the UCL because members of the public were likely to be, and in fact were, deceived.

119.   Defendants' actions as alleged hereinabove were "unlawful" within the meaning of the UCL because the fraudulent representations and subsequent overcharging and "upweighting" were in violation of 49 U.S.C. § 13708(b) and Cal. Business & Professions Code § 17500.

120.   As a direct result of Defendants' unfair, fraudulent, and unlawful actions in violation of the UCL as alleged above, Defendants paid far in excess for shipping services through Defendants than they would have paid had Defendants not used their "upweighting" scheme and priced all shipments consistent with their represented and advertised shipping rates, and thus were injured and lost money.

121.   Wherefore, Plaintiff and putative class members seek relief as prayed for herein.

## XIV.  **PRAYER FOR RELIEF**

1.   Plaintiff, individually and on behalf of the class, prays for damages in an amount to be awarded by a jury at least in excess of the jurisdiction of this Court.

2.   Plaintiff, individually and on behalf of the class, seeks an order holding that all contracts with Defendants are void to the extent Defendants assessed improper increased shipping charge corrections.

3.   Plaintiff seeks an order that this action may be maintained as a class action pursuant to Rules 23 (a) and 23(b)(2) or 23(b)(3) of the Federal Rules of Civil Procedure.

4.   Plaintiff individually, and as a representative of the class, further prays for such other, further and general relief to which he and the class members may be entitled.

5.   Costs of this action, including reasonable attorneys' fees and expenses

CLASS ACTION COMPLAINT

(including, without limitation, those attorneys' fees available pursuant to California Code of Civil Procedure section 1021.5); and

6. Any such other further legal or equitable relief that this Court deems just and proper.

DATED: September 5, 2017

**DAVIDOVICH KAUFMAN LEGAL GROUP, APA**

By:_____

Niv V. Davidovich, Esq.
Attorneys for Plaintiff,
YAS FRONTLINE DEVELOPMENT INC.,
and all persons similarly situated

## **DEMAND FOR JURY TRIAL**

Pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure rule 38, Plaintiff hereby demands a trial by jury.

DATED: September 5, 2017

**DAVIDOVICH KAUFMAN LEGAL GROUP, APA**

By:_____

Niv V. Davidovich, Esq.
Attorneys for Plaintiff,
YAS FRONTLINE DEVELOPMENT INC.,
and all persons similarly situated

CLASS ACTION COMPLAINT